```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

                              )
BRADLEY-FERN HALL I, LLC,     )
                              )              Civil Action
          Plaintiff,          )              No. 19-11181-DPW
                              )
                              )
v.                            )
                              )
MMA FERN HALL CROSSING LLC,   )
and BFIM SPECIAL LIMITED      )
PARTNER, INC.,                )
                              )
          Defendant.          )
----------------------------

DOUGLAS COMPANY, LLC,         )
                              )              Civil Action
          Plaintiff,          )              No. 20-10875-DPW
v.                            )
                              )
MMA KINGS CROSSING, LLC; MMA  )
SHELL POINTE, LLC; MMA        )
DOUGLAS MONTAGUE, LLC;        )
and BFIM SPECIAL LIMITED      )
PARTNER, INC.,                )
          Defendants.         )


             BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
                  UNITED STATES DISTRICT JUDGE

                         VIDEOCONFERENCE

                         October 9, 2020

            John J. Moakley United States Courthouse
                       One Courthouse Way
                  Boston, Massachusetts  02210




                              Kelly Mortellite, RMR, CRR
                              Official Court Reporter
                              One Courthouse Way, Room 3200
                              Boston, Massachusetts  02210
                              mortellite@gmail.com
```

```
 1    APPEARANCES:

 2    Counsel on behalf of Plaintiff:
      David A. Davenport
 3    Winthrop & Weinstine, P.A.
      225 South Sixth Street, Ste.3500
 4    Minneapolis, MN 55402-4629
      612-604-6716
 5    ddavenport@winthrop.com

 6    Gregory S. Paonessa
      Burns & Levinson LLP
 7    125 Summer Street
      Boston, MA 02110
 8    617-345-3000
      gpaonessa@burnslev.com

 9
      Counsel on behalf of Defendant:
10    David E. Lurie
      Lurie Friedman LLP
11    One McKinley Square
      Boston, MA 02109
12    617-367-1970
      dlurie@luriefriedman.com
13
      Karen E. Friedman
14    Lurie Friedman LLP
      One McKinley Square
15    Boston, MA 02109
      617-367-1970
16    kfriedman@luriefriedman.com

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2          COURTROOM CLERK:  Civil Action Number 19-11181,

3     *Bradley Fern Hall v. MMA Fern Hall Crossing*, and with that,

4     20-10875, *Douglas Company LLC v. MMA Kings Crossing LLC*.

5          To all participants, pursuant to Local Rule 83.3 all

6     persons granted remote access to these proceedings are reminded

7     of the general prohibition against photographing, recording and

8     rebroadcasting of court proceedings.  Violation of these

9     prohibitions may result in sanctions.

02:33 10          Would counsel starting with the plaintiffs please

11     state your name for the record.

12          MR. DAVENPORT:  Good afternoon.  David Davenport from

13     Winthrop & Weinstine on behalf of plaintiff.  My colleague,

14     Alex Hagstrom, is also on the Zoom line, along with my client

15     Bradley Queener, also Drew Schaumber who is a representative of

16     Douglas Company for the second case.

17          MR. LURIE:  David Lurie for the defendants, Your

18     Honor.

19          THE COURT:  All right.  Karen Friedman for the

02:33 20     defendants as well.

21          MR. PAONESSA:  Your Honor, Greg Paonessa from Burns &

22     Levinson on behalf of the plaintiffs.

23          THE COURT:  All right.  Well, since I got notice of

24     the case from Judge Casper, I've been trying to go through and

25     think about what I can offer on this.  I guess what probably is

1   of most immediate interest is an immediate resolution of the

2   case or as prompt a resolution of the case as possible since

3   people, I suppose, want to get on with their lives.

4        I'm sure that what's especially desirable is a

5   successful resolution, but I can't provide that to both parties

6   I don't think here.  But I can provide, I think, a way of

7   getting to a conclusion at least in the trial court as promptly

8   as possible.

9        As I've read the materials in Douglas, I'm not sure

02:34 10   that there's anything there that needs -- I'm afraid someone

11   has come on who we're getting feedback from -- anything there

12   that really is significantly different from what's happening in

13   Fern Hall, but you'll tell me that, I'm sure.

14        My basic view right now is that I will be denying full

15   summary judgment in Fern Hall and that I will be treating it as

16   a jury-waive case.  My view I suppose is that the same thing

17   would happen with the Douglas cases or the Douglas

18   partnerships, and I don't know if there's anything in there

19   that's unusual that I should be concerned about.

02:35 20        Here is what I propose, and I propose it, not finally

21   determine it, but I would issue an opinion in Fern Hall in the

22   next two weeks that would outline my resolution of the motion

23   for partial summary judgment and the question of jury waiver

24   that I think should provide you with as complete an

25   interpretation of the contract, which I believe is a model for

the Douglas contracts, as possible.  An outline, identifying

with some specificity, the areas in which I think there will be

some need for factfinding on my part as the finder of fact

under a jury-waive system.

Of course my determination of summary judgment is not

a determination of the facts but simply a question of whether

or not there's a genuine issue of material fact that has to be

resolved in a separate setting.

My sense is that what we're really talking about,

unless there is some significant battles or the parties want to

have some sort of significant battles over questions of

timeliness -- and even there I don't think that there's a

genuine issue of material fact -- it's really about experts.

It's about how reasonable the appraisal is of Mr. Jones and

what that appraisal would look like if there were introduced

the capital accounts of the investor limited partners.  That's

broad-brush.

So I outline that to see if the parties have another

way of getting to this promptly.  What I see as a battle of

experts, it may well be that you're going to have to have a

little bit more discovery, but not much, to get to that, and

that it would be effectively applicable for all of the cases

here unless there's some unique circumstances among one or the

other of the Douglas cases that I haven't been able to tease

out yet because I'm not fully, obviously, familiar.

1         So maybe, Mr. Davenport, I'll look to you first.

2         MR. DAVENPORT:  In terms of if we might need some more

3    discovery before the bench trial?

4         THE COURT:  Well, more broadly, as a way of dealing

5    with this, I suppose if you -- you know, you see my opinion,

6    and you say, "Well, it really doesn't apply to these other

7    cases, we have got to do something else," of course I'll

8    understand that.

9         But I want to get it out there for you to understand

02:38 10    the approach that I'm taking to this, and the approach that I'm

11   taking is that I do have to have evidence in this case, and the

12   evidence focuses both on the question of reasonableness of the

13   appraisal that Mr. Jones did, and inextricably intertwined is

14   what kind of valuation would result from inclusion of the

15   capital accounts, and the capital accounts get developed more

16   fully with some sort of evaluation of a forced sale.

17        So if I'm missing something, in broad-brush, about how

18   to proceed in this case in a prompt way, I want you to tell me.

19        MR. DAVENPORT:  I don't think so.  I mean, I think the

02:39 20   Douglas cases are very much in line with the Fern cases, which

21   is why we all agreed to seek reassignment so it would be before

22   you, because I think we all anticipate that your ruling and the

23   ultimate outcome will have a pretty significant effect on the

24   Douglas case.  Same appraiser, same methodology, generally the

25   same contracts, largely the same timeline, just a little bit

1    later the next year.

2          So it's a little hard, other than agreeing with you

3    conceptually, to see the court's order, understand the next

4    steps, but it's hard for me to imagine that what you're

5    outlining is inconsistent with at least plaintiffs' in both

6    cases thought process.

7          THE COURT:  Okay.  Mr. Lurie, any thought?

8          MR. LURIE:  Right now I'm not aware of any issue with

9    the Douglas case that would prevent the procedure that you

02:40 10   outline.  It makes sense to me.

11          THE COURT:  Okay.  So what I think would be the most

12   efficient and effective thing for me to do is to get this

13   memorandum out.  I've spent a fair amount of time with the

14   documents both at the pleading stage and now on summary

15   judgment.  And I think rather than take your time in argument,

16   I had to take my time getting that thing done.  I'm not sure

17   that there's anything more that's going to be added in argument

18   that I haven't seen in the papers already here.

19          What I propose to do is issue the memorandum as

02:41 20   promptly as I can.  I have other things I have to deal with in

21   the next two weeks, but I think I can get it out, and then, say

22   ten days after the memorandum, have the parties submit a

23   proposed scheduling order designed to bring the case to

24   resolution.

25          As I said, the factfinding I believe has to be done by

1  jury-waive, that is nonjury, which, as it happens, means that

2  this can happen a lot faster.

3        We're just starting criminal jury trials now.  We are

4  finding that while jurors are, commendably frankly, willing to

5  serve, the process of doing that and social distancing in our

6  courtrooms is extraordinarily difficult, and it's made much

7  easier, obviously, if we go jury-waive since we don't have to

8  have jurors in a case, even in a civil case, which we're

9  limiting now to eight-person cases.

02:42 10       But priority in jury cases is for persons in custody,

11  and we've got a ways to go with that.  I'm not even certain

12  that we'll be able to do two-person cases, two-defendant cases

13  in the courtroom with criminal cases because we have to limit

14  the size of our complement of people in the large courtrooms to

15  26, no more than 26 people.

16       While I was fairly deeply involved in the design of

17  this building, I thought those courtrooms were pretty big and

18  in fact have tried a 12-defendant criminal case with defendants

19  having two counsel each in the courtroom.  Now we can't do

02:43 20  that.  There's just no way to do it and limit the size of the

21  complement there.

22       That's by way of general background.  We'll talk more

23  specifically about what needs to be done, but you can start

24  thinking along those lines while I spend some time getting this

25  thing out to you.  And as I said, I think ten days might be

1   enough to narrow this so we can get right to the nub of the

2   case as promptly as possible.  And I think with a nonjury trial

3   I can give you something pretty promptly, which is not

4   something I can say to either criminal and civil cases now.

5   I'm in a cue with 13 other judges for criminal cases, and we

6   have to take turns in the courtrooms that we use.

7          So any other thoughts, any other comments that you'd

8   like to offer at this point?

9          MR. DAVENPORT:  No, Your Honor.

02:44 10          MR. LURIE:  No, Your Honor.

11          THE COURT:  Okay.  So I will get this out to you as

12   promptly as I can, and then we'll go from there along those

13   lines, unless, after you look at it you say, "No, no, we can't

14   do that."  And of course I will understand that you understand

15   your cases better than I, but that will at least get this thing

16   going more promptly to an ultimate resolution at least here in

17   this court.  Okay?

18          If there's nothing further, then we will be in recess.

19   Thank you.

20             (Adjourned, 2:44 p.m.)

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

1

2

3          I, Kelly Mortellite, Registered Merit Reporter

4  and Certified Realtime Reporter, in and for the United States

5  District Court for the District of Massachusetts, do hereby

6  certify that the foregoing transcript is a true and correct

7  transcript of the stenographically reported proceedings held in

8  the above-entitled matter to the best of my skill and ability.

9               Dated this 14th day of October, 2020.

10

11          /s/ Kelly Mortellite

12          _____

13          Kelly Mortellite, RMR, CRR

14          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25